**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

MADISON MATERIALS COMPANY, INC.                                      **PLAINTIFF**

V.                                                       CIVIL ACTION NO. 3:04-cv-14WS

ST. PAUL FIRE AND MARINE INSURANCE COMPANY            **DEFENDANT**


**MEMORANDUM OPINION AND ORDER**

Before the court are the cross-motions of the parties for summary judgment brought pursuant to Rules 56(a)$^1$ and (b)$^2$ of the Federal Rules of Civil Procedure. Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part that, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Each party herein contends it is entitled to a judgment on the papers and without benefit of trial.

---

[1] Rule 56(a) of the Federal Rules of Civil Procedure provides that, "[a] party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."

[2] Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim ... is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

This court's subject matter jurisdiction is predicated on diversity of citizenship as provided by Title 28 U.S.C. § 1332.[3] In a diversity action, this court is bound to apply the same law that a state court of the forum would apply. *Erie R. Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The forum state in this case is Mississippi. In obedience to the *Erie* Doctrine, this court must deduce Mississippi's ultimate position on the issue now presented to this court from the current body of Mississippi law on insurance policy language, applicable Fifth Circuit opinions, if any, decisional law of other states and decisional law from other federal courts. *See Helene Curtis Industries, Inc. v. Pruitt*, 385 F.2d 841, 848 (5th Cir. 1969).

## BACKGROUND

The plaintiff Madison Materials Company, Inc. ("Madison Materials") filed the instant lawsuit claiming breach of an insurance contract and bad faith failure to pay benefits. Madison Materials disagrees with the interpretation of the policy language by its insurer, the defendant St. Paul Fire and Marine Insurance Company ("St. Paul"), and brings this lawsuit to recover the difference between the $350,000.00 already tendered by St. Paul and the $1,469,148.53 total amount that was embezzled by one Vollie Neal Walker between 1992 and 2002. The parties agree that Vollie Neal

---

[3]Title 28 U.S.C. § 1332 provides in pertinent part: (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- (1) citizens of different States; ...

Walker, an employee of Madison Materials, embezzled $1,469,148.53 from Madison Materials in every year between 1992 and 2002. The parties also agree that during each year Walker was embezzling from the company, Madison Materials was covered for "losses due to crime" under Policy No. 406 CF 1400, and that Madison Materials did not discover Walker's illegal activities until January of 2003, shortly after Walker's embezzlement activities ceased in 2002.

Madison Materials says it gave St. Paul notice of its losses incurred as the result of Walker's embezzlement on February 7, 2003, soon after this activity was discovered in January of 2003. St. Paul acknowledges receipt of this notice and says it conducted its own separate investigation of the matter and a separate audit. Consequently, St. Paul says it confirmed Walker's embezzlement activity between 1992 and 2002. St. Paul, though, has tendered to Madison Materials cash benefits in the amount of $350,000.00 for the employee misconduct occurring between January 26, 2000, and January 26, 2003, on the theory that the only coverage period in effect is the one when the embezzlement in question was discovered.

Madison Materials strongly disagrees, contending that Policy No. 406 CF 1400 was renewed on an annual basis and continued to cover losses due to employee dishonesty occurring in any year a policy had been in existence, so long as the dishonesty was discovered and reported to St. Paul within one year after all continuing coverage had ended. Madison Materials now claims bad faith failure to pay all benefits due, and seeks punitive damages. Madison Materials has filed for summary judgment on these claims. St. Paul also seeks summary judgment that it has paid all benefits provided under the terms of the policy.

For the reasons that follow, this court finds that the summary judgment motion submitted by St. Paul is well taken and should be granted.

## THE ST. PAUL POLICY

During the period between 1991 and 2002, Madison Materials initially purchased and continually renewed Policy No. 406 CF 1400 which provided coverage for losses caused by employee dishonesty, defined by each policy as, "dishonest acts committed by an **Employee**, ... acting alone or in collusion with other persons ... with manifest intent to (1) Cause You to sustain loss; and also (2) Obtain financial benefit ... for (a) The **Employee**, or (b) any person or organization intended by the **Employee** to receive that benefit." See Employee Dishonesty Coverage Form D(3)(a). The coverage was renewed annually, paid for by annual premiums.

The most current version of Policy No. 406 CF 1400 in effect at the time Neal Walker's embezzlement was discovered in January of 2003, provided a coverage period extending from January 26, 2000, to January 26, 2003.[4] Subsection b. of the policy states that, "[s]ubject to the Loss Sustained During Prior Insurance Condition, *we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period* (emphasis added)." St. Paul maintains that this language refers only to losses occurring during the coverage period from January 26, 2000, to

---

[4]The policy contains a paragraph denominated as the Crime General Provisions (Loss Sustained Form), B, General Conditions which provides that, "a. [t]he Policy Period is shown in the Declarations." The period shown there is from January 26, 2000, to January 26, 2003.

January 26, 2003.  Coverage will be provided, says St. Paul, so long as the loss or losses are discovered and reported within one year after the end of coverage.[5]

Policy No. 406 CF 1400 also provides under the heading "Loss Sustained During Prior Insurance" that, "a. If you ... sustained loss during the period of any prior insurance that you ... could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:  (1)This insurance became effective at the time of cancellation or termination of the prior insurance;  and (2) The loss would have been covered by this insurance if it had been in effect when the acts or events causing the loss were committed or occurred."  Policy No. 406 CF 1400 defines the term "occurrence" as, "... *an act or series of related acts* involving one or more "**Employees**" (emphasis added).  *See* Employee Dishonesty Coverage Form, D(3)(b).  This language, says St. Paul, means that Neal Walker's acts of embezzlement were a series of related acts which constituted one, and only one, occurrence.

According to St. Paul, Policy No. 406 CF 1400 bearing the coverage period from January 26, 2000, to January 26, 2003, was the only policy in effect when the embezzlement in question was discovered.  Each coverage period, says St. Paul, was for three years, and not year to year as claimed by Madison Materials.  So, says St. Paul, each time Policy No. 406 CF 1400 was renewed began a new three-year

---

[5] Pursuant to the part of the policy denominated "Crime General Provisions (Loss Sustained Form), B, General Conditions" the policy provides an "Extended Period to Discover Loss" which states that, "[w]e will pay only for covered loss discovered no later than one year from the end of the policy period."

coverage period, even though premiums were paid in three separate installments over each three-year coverage period.

Madison Materials contends that all acts of embezzlement by Walker from 1992 to 1999 should be covered because they were discovered before the end of the last policy in force, and because the employee dishonesty coverage has been in effect each year that an embezzlement has occurred.

Thus, the parties differ sharply over Policy No. 406 CF 1400's period of coverage.  In the midst of this dispute is the parties' disagreement over the meaning of the term "occurrence" in the policy language and how the present definition affects St. Paul's liability.

## **THE SUMMARY JUDGMENT STANDARD**

As noted previously, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c) of the Federal Rules of Civil Procedure.  On a motion for summary judgment, a movant has the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).  In the instant case, both parties have filed opposing motions for summary judgment and they agree that there is no genuine issue of material fact.  According to Madison Materials and St. Paul, either one party or the other is entitled to judgment as a matter of law.

Madison Materials contends that St. Paul's policy of insurance is ambiguous in several respects. Ordinarily, where a contract is ambiguous, summary judgment is improper since the intent of the parties would be a genuine issue of material fact. *Freeman v. Continental Gin Company*, 381 F.2d 459, 463 (5th Cir. 1967). The preliminary issue of whether there is ambiguity is a question of law, not of fact, and is for the court to decide. *Id*.

So, pursuant to Rule 56(c) of the federal Rules of Civil Procedure, this court will enter summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## APPLICABLE LAW

The construction and effect of an insurance policy are matters of law to be decided by the court." *Jones v. Southern Marine & Aviation Underwriters, Inc.*, 888 F.2d 358, 360 (5th Cir. 1989) (citations omitted). Inasmuch as this case is before the court based on diversity of citizenship, this court must employ the substantive law of the State of Mississippi to determine the outcome of this dispute. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Sentry Insurance v. R.J. Weber Company*, 2 F.3d 554, 556 (5th Cir. 1993).

Under Mississippi law, a contract of insurance, like any other contract, must be interpreted according to its terms. *Foreman v. Continental Casualty Company*, 770 F.2d 487, 489 (5th Cir. 1985). The interpretation of an insurance policy is a question of

law for the court when the meaning of the terms is clear and unambiguous. *Aero International, Inc. v. United States Fire Insurance Company*, 713 F.2d 1106, 1109 (5th Cir. 1983). "No rule of construction requires or permits the court to make a contract differing from that made by the parties themselves, or to enlarge an insurance company's obligations where the provisions of its policy are clear.' " *Id.* at 489.

## THE MATTER OF AMBIGUITY

Under Mississippi law, the interpretation of an insurance policy is a question of law, not one of fact." *Noxubee County School District v. United National Insurance Company*, 883 So.2d 1159, 1165 (Miss. 2004). Mississippi insurance law is quite clear that "when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. *Noxubee County*, 883 So.2d at 1165, citing *Paul Revere Life Insurance Company v. Prince*, 375 So.2d 417, 418 (Miss. 1979). "Any ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage.*" Nationwide Mutual Insurance Company v. Garriga*, 636 So.2d 658, 662 (Miss. 1994). "Further, provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer." *Noxubee County*, at 1165.

## ANALYSIS

### A. The *BUDDY JONES* Decision

Madison Materials argues that eleven policies are triggered and provide separate limits of $350,000.00 for each year of Walker's illegal conduct taking place between 1992 and 2002.  In support of this contention Madison Materials submits the case of *Universal Underwriters Insurance Company v. Buddy Jones Ford*, 734 So.2d 173 (Miss. 1999), where a bookkeeper and office manager of Buddy Jones Ford Lincoln-Mercury, Inc., misappropriated funds on 175 separate occasions from 1984 through 1988, resulting in a total loss to the dealership of $233,082.97. The embezzlement was discovered on or about July 25, 1988, during an unannounced independent audit.

Universal Underwriters Insurance Company had issued to Buddy Jones Ford Lincoln-Mercury, Inc., a series of garage liability policies of insurance for the policy period October 1, 1984, to October 1, 1985;  from October 1, 1985, to October 1, 1986;  from October 1, 1986, to October 1, 1987;  from October 1, 1987, to October 1, 1988;  and from October 1, 1988, to October 1, 1989.  The policies contained identical language relating to coverage for employee dishonesty.  The insuring agreement provided in pertinent part as follows:

> INSURING AGREEMENT – WE will pay for LOSS as defined as follows:
>
> EMPLOYEE DISHONESTY – WE will pay for LOSS of MONEY, SECURITIES, and other property which YOU sustain resulting directly from any fraudulent or dishonest act committed by an EMPLOYEE with manifest intent to:
>
> (a) cause YOU to sustain such a LOSS, and;
>
> (b) obtain financial benefit for the EMPLOYEE, or any other person or organization intended by the EMPLOYEE to receive such benefit other than

salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, and other EMPLOYEE benefits earned in the normal course of employment.

\* \* \*

9. THE MOST WE WILL PAY – LOSS payment will not reduce OUR liability for other LOSSES.  From the amount of LOSS, WE will deduct the net amount of all recoveries obtained or made by YOU (other than LOSS covered by any other bond or insurance) or US. If the net LOSS is in excess of the deductible stated in the declarations, and regardless of the number of persons or organizations included in YOU, the most WE will pay:

(a) under EMPLOYEE DISHONESTY, is the limit stated in the declarations as applicable to a LOSS caused by one or more EMPLOYEES, or to all LOSS caused by one EMPLOYEE or in which the EMPLOYEE is concerned or implicated;

\* \* \*

Regardless of the number of years this Coverage Part continues in force, the limit stated in the declarations is not cumulative from one period to another, or from one year to another.

\* \* \*

The discovery clause of the insuring agreement provided as follows: "LOSS is covered only if discovered not later than one year from the end of the Coverage Part period."

The Mississippi Supreme Court in *Buddy Jones Ford* concluded that all these provisions supported the plaintiff's contention that all policies in effect between 1984 and 1988 were triggered by 175 separate occurrences of employee dishonesty

committed during this time period.  "The words of limitation," said the Court, "... are strictly construed against the insurer, where they are of uncertain import or reasonably susceptible of a double construction," citing *Home Ins. Co. v. Thunderbird, Inc.*, 338 So.2d 391, 394 (Miss.1976) (quoting 1 Couch on Insurance 2d § 15:92 (1959));  and *Home Owners Ins. Co. v. Keith's Breeder Farms, Inc.*, 227 So.2d 293, 295 (Miss.1969) ("any ambiguity in the language of the policy will be construed more strictly against the writer of the policy").  Madison Materials contends that this finding is dispositive of the issue in the instant case.  Certainly, the similarity between the language of the instant policy and the Universal Underwriters policy in *Buddy Jones Ford* is obvious, but the story does not stop here.

  Finding no Mississippi case law on point, the *Buddy Jones Ford* Court justified its conclusion by referring to cases in other jurisdictions.  The Court particularly noted that, "the cases in which courts have considered the question of whether stated policy limits and deductibles for employee dishonesty coverage apply *to a series of acts* caused by an employee, are those cases in which the policy language clearly and unambiguously states that multiple acts may constitute one occurrence of loss." *Universal Underwriters v. Buddy Jones Ford*, 734 So.2d at 177.  *See American Commerce Insurance Brokers, Inc. v. Minnesota Mutual Fire & Casualty Company*, 551 N.W.2d 224, 225 (Minn. 1996), where the policy stated specifically that all loss or damage involving a single act or series of related acts was considered one occurrence; *Business Interiors, Inc. v. Aetna Casualty & Surety Company*, 751 F.2d 361 (10th Cir. 1984), where the dishonest employee had forged forty checks and the

district court found that the insured had suffered only one loss. The Mississippi Supreme Court concluded that, "a factual issue of whether multiple acts are sufficiently related to constitute one occurrence of loss only arises where the applicable policy language unambiguously states that multiple acts may be so treated." *Universal Underwriters,* at 177. *See also Jefferson Parish Clerk of Court Health Insurance Trust Fund v. Fidelity & Deposit Company of Maryland*, 673 So.2d 1238, 1245 (La.Ct.App. 1996), where occurrence was defined as "all loss caused by, or involving, one or more employees, whether the result of a single act or a series of acts;" the court held that only one occurrence of employee dishonesty could be found in the employee's series of dishonest actions.

Finding no language in Universal Underwriters' policy stating that multiple acts or a series of related acts may be treated as one occurrence of loss, the Mississippi Supreme Court agreed with the plaintiff that the policy limits of each policy in effect between 1984 and 1988 applied to each one of the 175 incidents of employee dishonesty.   Each incident constituted an occurrence.

Now, Madison Materials contends that the decision in *Buddy Jones Ford* controls the outcome of the instant case. Certainly, the insuring agreement language in the Universal Underwriters policy is very similar to the language of St. Paul's policy in the instant case. However, as noted by St. Paul, the definition of "occurrence" in its policy is not the same.

### B.  "Occurrence" and the *"act or series of related acts"* Language

The interpretation of the word "occurrence" as used in any insurance contract is a question of law. *See Rutgers State University v. Martin Woodlands Gas Company*, 974 F.2d 659, 661 (5th Cir. 1992). St. Paul's policy states that, "[t]he most We will pay for loss in any one "occurrence," is the applicable Limit of Insurance shown in the DECLARATIONS. This limit is $350,000.00. *See* Employee Dishonesty Coverage Form, B.

Unlike the Universal Underwriters policy in *Buddy Jones Ford*, clearly worded language in St. Paul's policy states that multiple acts or a series of related acts may be treated as one occurrence of loss. As the Mississippi Supreme Court noted in *Buddy Jones Ford*, an occurrence is determined by the cause or causes of the resulting injury. *Id.* at 177. In the instant case, several causes can constitute one occurrence. In *Buddy Jones Ford*, unlike the instant case, Universal Underwriters could show nothing to rebut the plaintiff's contention that the limitations clause unambiguously applied to each separate occasion of embezzlement. In the instant case, St. Paul can accomplish what Universal Underwriters could not because the instant policy contains language stating that multiple acts or a series of related acts may be treated as one occurrence of loss.

An ambiguity is created when a policy can logically be interpreted in more than one way, one of which would allow coverage. *Buddy Jones Ford*, 734 So.2d at 176. The instant policy cannot be interpreted in more than one way on the matter of what constitutes an occurrence; so, the policy is unambiguous on that point. While no Mississippi case directly addresses the definition of occurrence found in St. Paul's

policy, this court finds persuasive authority in the decisions of cases such as *Bethany Christian Church v. Preferred Risk Mutual Insurance Company*, 942 F.Supp. 330, 335 (S.D. Tex. 1996)[6] where one employee's thefts of cash over the course of three separate policy renewal periods were held to constitute one occurrence so that the church could only recover the limit of the one policy in effect at the time the church discovered the theft. *Id*. at 335. The policies at issue there defined "occurrence" in the exact manner as the policy at issue in this case. This court also notes the case of *Diamond Transportation System v. Travelers Indemnity,* 817 F.Supp. 710, 712 (N.D. Ill. 1993), holding that a series of acts by an employee of the defendants between March, 1989, and March, 1993, were a single "occurrence" of theft. These cases are

---

[6] In *Ran-Nan Inc. v. General Accident Insurance Company of America*, 252 F.3d 738, 740 (5th Cir. 2001), the Fifth Circuit distinguished *Bethany Christian Church*, noting that, as in the instant case, it involved a series of thefts by a single employee, whereas the *Ran-Nan* dispute involved independent pilfering schemes by two different employees working separately. The Fifth Circuit rejected the insurer's "one" occurrence argument, stating that, "[t]o accept General Accident's proffered definition of 'occurrence' this court would have to find that the independent nature of these two series of thefts is irrelevant and that one loss with two unrelated causes is one "occurrence." The more natural reading of the policy, however, is that the 'involving' clause signifies that a group of employees conspiring together to steal is a single "occurrence." The facts of *Ran-Nan* are not present in the instant case and its analysis is not applicable here.

14

but two of the eight cases[7] cited by St. Paul in support of its argument on its definition of occurrence and the consequences of that definition.

This court is persuaded that in light of the available authority, the definition of "occurrence" in St Paul's policy carries the day for St. Paul.  Inasmuch as Neal Walkers' several acts of embezzlement constitute one occurrence, Madison Materials may recover only the limit of the one policy in effect at the time it discovered Walker's theft.  *Bethany Christian Church*, at 335.  The amount of this limit is $350,000.00, the amount already tendered by St. Paul.

### C.  The Execution or Renewal Report

Exhibit I to Madison Materials' motion for summary judgment  is an Execution or Renewal Report pertaining to Policy No. 406 CF 1400's which shows that the premium period for the renewed policy is three years, with the premium divided into three equal installments of $815.00 each.  The next line shows that the "Premium Period" extends from January 26, 2000, to January 26, 2003.  Madison Materials submits that this reference to a "Premium Period" means that St. Paul only intended the "Premium Period" to extend for three years, not the policy coverage period.

---

[7] *See also Wausau Business Ins. Co. v. U.S. Motels Management, Inc.*, 341 F.Supp.2d 1180 (D.Colo. 2004), quoting the Tenth Circuit and the Third Circuit, and tasked with determining whether a series of acts of embezzlement were one occurrence or multiple occurrences, stated that the determinative "question is not whether the employee's various methods of embezzling were related ... but whether the cause of the loss was related." *Id.* at 1183-84.  The *Wausau Business* court determined that "[t]he cause of defendant's loss was the dishonesty of one employee" and, therefore, constituted one occurrence.  *Id. Glaser v. Hartford Casualty Insurance Company*, 364 F. Supp.2d 529, 537 (D. Md. 2005 (same).

Madison Materials contends that the use of the phrase "Premium Period" in the Execution or Renewal Report creates an ambiguity as to the period of coverage, since the premium period, not the period of coverage, is contained on this page. This court is not persuaded.

This court has reviewed Exhibit I closely, and finds that the Execution or Renewal Report refers to a premium period for the renewed policy in question. This Execution or Renewal Report is attached to the Commercial Crime Policy Declarations page, Form A, which states clearly that the policy's period of coverage is from January 26, 2000, to January 26, 2003. That the "Premium Period" of the Execution or Renewal Report and the period of coverage stated in the Declarations page should coincide is no surprise and offers no ascertainable basis for concluding that St. Paul's policy is ambiguous on the issue of whether the policy coverage period was for three years.

### D. The Premium Statements and Two Invoices

Madison Materials submits three documents, a statement and two invoices, in support of the contention that any embezzlement taking place in any year of coverage between 1992 and 2002 would be covered by that year's policy up to one year after its coverage period expired; or, that by a subsequent renewal of the policy, the past illegal activity would be covered even if not discovered until several years later, so long as a renewed policy was in effect.

The first of these documents (Exhibit R) is a statement dated January 31, 2000, which reflects a premium balance due of $875.00, and a binder number of

117069.  The statement also shows an onset date for coverage of losses relating to crime of January 26, 2000.  The next document, Exhibit S, is an invoice referring specifically to Policy No. 406 CF 1400 and loss due to crime, showing receipt of an annual payment of $815.00 from Madison Materials for this coverage.  The invoice states that the effective policy period is from January 26, 2001, until January 26, 2002.  Exhibit T is an invoice similar to Exhibit S, showing the same annual installment of $815.00 and a period of coverage from January 26, 2002, to January 26, 2003.

Significantly, these three documents are ordinary business documents of The Bottrell Agency, not part of any St. Paul insurance contract or any other St. Paul document.  The Bottrell Agency was the party responsible for collecting premiums on behalf of the insurance companies it represented, including St. Paul, in accordance with what the respective policies required.  This court is not persuaded that these documents can support a contention of ambiguity with regard to the coverage period provided by Policy No. 406 CF 1400 issued by St. Paul.


### E.  The "Stacking" Issue Raised by Madison Materials

Under Mississippi Law, the term "stacking" applies to uninsured motorist coverage.  *See United States Fidelity and Guaranty Company v. Ferguson*, 698 So.2d 77, 79 (Miss. 1997) (public policy of this State mandates stacking of [uninsured motorist] coverage for every vehicle covered under a policy, regardless of the number or amount of the premium(s) paid for [uninsured motorist] coverage).  Madison Materials submits that the various coverage periods under Policy No. 406 CF 1400 should accumulate from year to year or coverage period to coverage period.  This

argument is undermined by a non-accumulation of coverage provision contained under the "General Conditions" provisions of Policy No. 406 CF 1400. The language states that, "[w]e will pay only for covered loss discovered no later than one year from the end of the policy period," *and "[r]egardless of the number of years this insurance remains in force, or the number or premiums paid, no Limit of Insurance cumulates from year to year or period to period*" (emphasis added). Pursuant to this language, policy benefits do not accumulate with the benefits provided by Policy No. 406 CF 1400 under either previous coverage periods or subsequent coverage periods.

## CONCLUSION

Therefore, in accordance with the foregoing analysis, the motion of the defendant St. Paul Fire and Marine Insurance Company for summary judgment [**Docket No. 52-1**] is well taken and is hereby granted. The motion of Madison Materials for summary judgment [**Docket No. 47-1**] is denied. The court will enter a final judgment in accordance with the local rules.

**SO ORDERED AND ADJUDGED** this the 27th day of September, 2006.

       **s/ HENRY T. WINGATE**
        **CHIEF UNITED STATES DISTRICT JUDGE**

CIVIL ACTION NO. 3:04-cv-14WS
Memorandum Opinion and Order
Granting Summary Judgment